## Henry Roop *versus* Portious Johnson.

Under the Rev. Stat. c. 94, the return of the officer of a levy upon land, that the debtor's agent, named in the return, selected an appraiser, is regarded as *prima facie* evidence of the authority of the agent to select an appraiser, and that the debtor was virtually notified for the purpose; especially where it does not appear, that there was any privity between the execution debtor and the demandant.

If the justice certifies, that certain persons named, personally appeared and made oath, in proper form, as appraisers of real estate, the certificate furnishes sufficient evidence, that the appraisers were sworn by him, although he may omit the words, usual in such cases, preceding his signature, "Before me."

Nor will the levy be void, if the appraisers, in the certificate of the magistrate and in the return of the officer, are denominated "persons," and not "men," in the language of the statute, the names of the persons indicating that they were males, and not females.

It is a sufficient proceeding with the officer to view and examine the land, by the appraisers, under Rev. Stat. c. 94, § 6, if they proceed under the direction and supervision of the officer.

The true construction of the seventh section of the same statute is, that whatever the nature of the estate may be, it shall be described by metes and bounds, or in such other mode, as that the same may be distinctly known and identified.

This was a writ of entry.   The tenant claimed a part of the premises under one White, whose title thereto depended upon the validity of the levy of an execution in his favor thereon, as the property of Benjamin Johnson.

The facts in relation to the several objections appear in the opinion of the Court.

*W. Kelley* argued for the demandant.   His objections, to the title under the levy, are stated in the opinion of the

Court. He cited Rev. Stat. c. 94, § 4, 5, 6, 7; 2 Mass. R. 154; 8 Mass. R. 284; 7 Greenl. 146; 12 Mass. R. 348; 14 Mass. R. 403; 17 Mass. R. 299; 11 Mass. R. 163; 16 Maine R. 209.

*Hubbard,* for the tenant.

The opinion of the Court was by

WHITMAN C. J. — The defendant holds, and defends a part of the demanded premises under one Turrell White, who levied an execution thereon. If the levy was well made the defence, as to such part, is admitted to be good. But the plaintiff alleges it to be defective in several particulars. The first is, that Benjamin Johnson, the debtor in the execution, was not notified to select an appraiser; and the second is, that it is stated in the return of the officer that an appraiser was selected by the debtor's agent, one Portious Johnson. These two objections may be considered together. It is certain that what a man may do himself, he may generally do by his agent; and we cannot doubt that a debtor might delegate his power, to receive notice and appoint an appraiser, to an agent. The statute, it is true, does not, in terms, prescribe that the notice may be to an agent, or that an appraiser may be appointed by an agent; nor does it prescribe in terms that notice may, in any event, be given to an attorney. It merely says, if the debtor shall neglect to appoint an appraiser, after notice *given him* by the officer, if the debtor or his attorney be living in the county, where the land lies, the officer shall appoint one for him. There can, nevertheless, be no doubt, but that it was in contemplation of the legislature, if the debtor did not live in the county, and the attorney did, that he should be notified; nor that he, in such case, might appoint an appraiser. Now an attorney is but an agent; and attorney and agent are used as terms nearly, if not quite, synonymous. *Pratt & al.* v. *Putnam,* 13 Mass. R. 365. Mr. C. J. Parker in that case says, " it ought not to be in the power of the sheriff, who uses one instead of the other, by ignorance or design, to defeat the creditor's title." Although the statute speaks only of notice

to the debtor, and of his selecting an appraiser, yet it has been held that notice to the guardian of a spendthrift, and a selection of an appraiser by him, was sufficient. *Bond* v. *Bond,* 2 Pick. 382. It is provided further in the statute, that the officer shall deliver seizin and possession to the creditor or his attorney ; but it was remarked, in the case of *Pratt & al.* v. *Putnam,* that no reason was apparent why any person, who might act in this respect for the creditor, should not be considered as his attorney for the purpose ; and that a subsequent ratification might be sufficient. We thus see that the letter of the statute, is not solely to be regarded ; and that a reasonable and practicable construction may be adopted, whenever the manifest object of the statute shall clearly require it. And indeed it is well known that instances are not unfrequent, where a departure from what may seem to be the literal import of a statute becomes indispensable, in order to effectuate the intent of the legislature. It is sufficient that it appears substantially, that the debtor had notice. No particular form of giving it is prescribed, and therefore none need be specified in the officer's return. Hence it has been holden that the return of the officer, that the debtor neglected to appoint, &c. implied that he had been notified ; for the officer would be guilty of a false return in saying the debtor neglected, if he had not been notified. *Blanchard* v. *Brooks,* 12 Pick. 47. On the whole we cannot see reason to doubt, that the return of the officer, that the debtor's agent, named in the return, selected an appraiser, must be regarded as *prima facie* evidence of the authority of the agent to select an appraiser, and that the debtor was virtually notified for the purpose ; especially as it does not appear in the case, that there was any privity between the execution debtor and the plaintiff.

The third objection is, that it does not appear, by the certificate of the justice of the peace, that the appraisers were sworn before him. And it is true that, in the conclusion of his certificate, he has omitted to prefix to his signature the words, usual in such cases, " before me." Hence it is contended, that, although the justice has certified that they were

sworn, yet that it might have been done before some one else. The certificate begins, " Then personally appeared, " &c. With such a beginning, and considering that the magistrate, if he did not administer the oath himself, would be guilty of gross malversation in his office, which is not to be presumed upon slight grounds, it would be irrational to doubt, that the duty was performed by him personally. This objection therefore is unfounded.

It is next objected that the appraisers, in the certificate of the magistrate, and in the return of the officer, are denominated " persons," and not " men," in the language of the statute ; and, therefore, may have been females. It is undoubtedly true, that the certificate of the magistrate, and return of the officer should be explicit to a common intent. And when they are so they must be deemed sufficient. In the certificate they are named Josiah Fernald, Nathaniel H. Hubbard and F. L. B. Goodwin ; and they are all entitled esquires ; and the return refers to the persons named in the certificate. The christian names of two of them clearly indicate that they were males ; and the titles of each have the same tendency. Besides, the gross absurdity of the supposition, that females were selected for appraisers, negatives any other supposition, than that the word persons, was used as synonymous with the word men. This objection therefore we must regard as originating in an excess of hypercriticism.

Again ; — it is objected, that it does not appear, by the return, that the appraisers proceeded, as the language of the statute is, with the officer to view and examine the land. The return is, that the appraisers entered upon and viewed the premises, the same having been shown to them by the creditor, White. The officer makes his return under his official sanction ; and, as we are bound to believe, from his own knowledge of the facts by him set forth. Now, how could he officially know that they entered upon, and viewed the premises, and appraised the same, &c. unless he was there with them, and, of course, they with him. But we cannot well regard this part of the statute as intending any thing more, than that

the appraisers should proceed under the direction and supervision of the officer. And this they appear satisfactorily to have done. This objection, therefore, also fails.

The only remaining objection is, that the nature of the estate, whether fee simple or a less estate, &c. is not set forth; and § 7 of c. 94 of the statutes is relied upon in support of it. This section, like the others in the same chapter, is inartificially worded ; and, taken in parts detached from each other, may seem a little obscure. The first part would seem to imply that the nature of the estate alone was in contemplation to be described; but, on recurring to the latter part, it is manifest, that, taken in connexion with the other, nothing more is intended, than to say, whatever the nature of the estate may be, it shall be described by metes and bounds, or in such other mode, as that the same might be distinctly known and identified.

As the parties have agreed, the defendant is to be defaulted; but judgment is to be entered up, that the plaintiff recover only so much of the demanded premises as is not covered by the said levy.